**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| Alicia Janel Hood, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:25-13111-RMG |
| v. | ) | |
| | ) | |
| Frank Bisignano, Commissioner of Social | ) | |
| Security, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, acting pro se, brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial

review of the final decision of the Commissioner of Social Security denying her claim for disability

insurance benefits ("DIB"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02

DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The

Magistrate Judge issued a Report and Recommendation ("R & R") on March 18, 2026,

recommending that the Commissioner's decision be reversed and remanded for further proceedings.

(Dkt. No. 33). The Commissioner filed no objections to the R & R. The Plaintiff filed responses

to the R & R. (Dkt. Nos. 36, 37). For the reasons set forth below, the Court reverses the decision

of the Commissioner and remands the matter to the agency with instructions to award benefits.

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has

no presumptive weight, and the responsibility to make a final determination remains with the Court.

*Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination

of those portions of the Report and Recommendation to which specific objection is made. The Court

may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

### Factual Background

Plaintiff filed an application for DIB on December 13, 2023. The record documents that Plaintiff had a long history of back-related problems, including lumbar back surgery in 2006. In the Fall of 2023, she began experiencing a series of falls. She was seen in the Pelham Medical Center Emergency Department in Greer, South Carolina on October 15, 2023, relating to frequent falls and the onset of intermittent urinary incontinence. (Dkt. No. 21 at 395). An MRI was ordered by the emergency room physician, and Plaintiff was diagnosed for the first time with intermittent urinary

incontinence. (*Id*.). A cervical MRI was performed on October 25, 2023, and showed "severe spinal canal stenosis" at Level C 5-6 with "cord impingement." (*Id*. at 382-83). A Pelham Medical Center emergency department note of November 4, 2023, documented that Plaintiff's "life has worsened over the past 2 weeks and she is having worsening pain in her throat and neck. Pt. says she continues to lose control of her bladder." (*Id*. at 380). A note from her physician's office dated November 7, 2023, indicates that she was "'peeing all over herself' multiple times a day." (*Id*.).

Plaintiff was scheduled for back surgery and had a pre-operative note on November 8, 2023, which documented that she "has been having increase in pain with frequent falls/urinary incontinence related to her neck." (*Id*. at 379). Plaintiff's back surgery was thereafter delayed because of her cardiac status, and she subsequently decided to delay her surgery due to her underlying cardiac condition.

An administrative hearing was conducted before an administrative law judge (ALJ) on June 4, 2025. Plaintiff testified that due to her spinal stenosis and cord compression "I can't feel when I got to go pee and poop." (*Id*. at 58). She also reported that she continued to experience falls due to her back condition and has problems walking and standing for any significant period of time. (*Id*. at 50, 52). Plaintiff testified that she no longer drives and generally stays at home because she was urinating on the car seat while she was driving and had an embarrassing incident of urinating on herself at the Family Dollar Store. (*Id*. at 55).

Plaintiff submitted in support of her disability claim a report from a treating chiropractor, who noted that "urinary and bowel incontinence [are] still an issue for the patient. (*Id.* at 467). Two of the chart reviews conducted for the Social Security Administration documented that Plaintiff had

significant neurological weakness due to her spinal stenosis that limited her ability to stand and walk and was "incontinent of bladder and bowel." (*Id*. at 91, 99).

The ALJ issued a decision on July 2, 2025, finding that Plaintiff suffered from multiple severe impairments, including "cervical stenosis, lumbar degenerative disc disease status post L4-L5 left sided facetectomy, hypertension, and obesity." (*Id.* at 30). The ALJ noted Plaintiff's testimony regarding her incontinence and found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence or other evidence in the record for the reasons explained in this decision." (*Id*. at 32).

Social Security regulations require that where a claimant provides subjective statements regarding an impairment, the ALJ is required to conduct a two step process. First, the ALJ must look to the objective evidence showing that a condition could reasonably produce the alleged symptoms. 20 C.F.R. §404.1529(b). If the ALJ concludes that the claimant has met the requirements of the first step, he must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities.

§ 1529(c). This second step review requires the ALJ to discuss multiple factors, including the impact of the condition on the claimant's ADLs, the duration of the symptoms, any precipitating or aggravating factors, the treatment the claimant receives, and other factors concerning the claimant's functional limitations. *Id*.; SSR 16-3P, 2017 WL 5180304, at \*6. The ALJ is required to explain how the claimant's alleged symptoms are "consistent or inconsistent with the evidence in [the]

record" and how the evaluation of the claimant's symptoms led to the ALJ's conclusion. SSR-16-3P, 2017 WL 5180304, at *8.

The ALJ found that Plaintiff satisfied step one for the evaluation of her subjective complaint of incontinence but then failed to address the second step of the process of evaluating the complainant's subjective complaints. (Dkt. No. 21 at 32-35). As a consequence of this oversight, the ALJ failed to include Plaintiff's clearly documented evidence of incontinence as a severe impairment.

The ALJ concluded that although Plaintiff suffered from multiple severe impairments, Plaintiff retained the residual functional capacity to do less than the full scope of sedentary work. (*Id.* at 31). This is the lowest level of functional capacity a claimant can have and not be deemed disabled under the Social Security Act. As a result of this finding, the ALJ determined that Plaintiff was not disabled under the Social Security Act.

Plaintiff thereafter appealed to this Court pro se and her appeal was initially assigned to the Magistrate Judge for pretrial handling. The Magistrate Judge issued an R & R, recommending that the ALJ's decision be reversed because he failed to conduct the analysis required under step two of § 404.1529(c). Specifically, the Magistrate Judge found that the ALJ "failed to explain how the evidence failed to support restrictions in the RFC assessment to accommodate Plaintiff's incontinence." (Dkt. No. 33 at 41-42).

Plaintiff submitted to the Appeals Council additional evidence to support her disability claim, which included new and material medical records from her treating physicians. One office note dated May 9, 2025, from a treating physician, Dr. Cara Douglass, documented that Plaintiff "has a long history of urinary incontinence since 2023. . . She is unable to work due to urinary

-5-

incontinence.  She is unable to tell when she has to go." (Dkt. No. 21 at 71).  Another treating

physician's note from Dr. Curtis MacDonald, dated July 30, 2025, documented Plaintiff's "increased

incontinence of urine and stool" after undergoing spinal manipulation by a chiropractor.  Dr.

MacDonald further noted that patients with "compressive spinal cord issues" have difficulty

maintaining gainful employment because of "work load expectation and general mobility." (*Id.* at

76).  The Appeals Council refused to consider this new and material evidence because the

"additional evidence does not relate to the period at issue," which concerned only the period prior

to July 2, 2025 (the date of the ALJ's decision). (*Id*. at 11).

## Discussion

Without even considering Plaintiff's documented persistent incontinence since late 2023, the

ALJ found that Plaintiff retained the residual functional capacity for less than the full scope of

sedentary work.  This is the lowest level of functional capacity a claimant can have and not be

deemed disabled under the Social Security Act.  Social Security policy provides that "an RFC for

less than a full range of sedentary work reflects very serious limitations resulting from an

individual's medical impariment(s) and is expected to be relatively rare."  SSR 96-9P, 1996 WL

374185, at *1.  When a claimant has such a  compromised condition, even a relatively small error

can tip the balance between disabled and not disabled.[1]

---

[1] In addition to overlooking Plaintiff's incontinence as a severe impairment, the ALJ's
decision significantly understated the seriousness of the findings from Plaintiff's October 25,
2023, MRI.  The ALJ decision stated that the MRI "revealed multilevel spinal stenosis which
was worst at C5-C6." (Dkt. No. 21 at 32-33).  The MRI report stated that Plaintiff had "severe
spinal canal stenosis" at C5-C6 and "cord impingement."  (*Id*. at 383).  The presence of cord
compression significantly elevated the severity of Plaintiff's cervical spine impairment.  As one
of Plaintiff's treating physicians observed, "[i]t is difficult for patients . . . with compressive
spinal cord issues to maintain gainful employment both for work load expectation and general
mobility." (*Id*. at 76).

After the ALJ's decision denying Plaintiff disability benefits, she submitted to the Appeals Council new and material medical records confirming her history of incontinence since 2023. Under the Fourth Circuit's decision in *Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011), where a claimant submits to the Appeals Council new and material evidence that conflicts with other record evidence and the findings of the ALJ, it is necessary for a fact finder to weigh and reconcile that conflicting evidence. Plainly, neither the Appeals Council nor any other fact finder weighed the newly produced evidence, which further supported Plaintiff's claim that her incontinence was a sever impairment which limited her capacity to function in the workplace.

The Appeals Council recognized the potential relevance of the new evidence, but refused to consider this new and material medical evidence because it allegedly "does not relate to the period at issue." Instead, the Appeals Council stated that Plaintiff would need to file a new disability application and go through the entire disability application process again. (Dkt. No. 21 at 11).

The Appeals Council's decision to ignore this new and material evidence was in clear disregard of the Fourth Circuit's decision in *Bird v. Commissioner of Social Security*, 699 F.3d 337, 341 (4th Cir. 2012), which held that evidence produced subsequent to the relevant time period of the claim is generally relevant and admissible if such "evidence permits an inference of linkage" to the relevant time period.

The newly produced records clearly related to the earlier time period and confirmed the statements of Plaintiff and multiple treaters that Plaintiff's incontinence imposed a significant burden on her ability to perform in the competitive marketplace. Consequently, the failure to consider this subsequently produced evidence supportive of Plaintiff's disability claim and in conflict with the findings of the ALJ constituted legal error.

Even without considering the evidence presented to the Appeals Council, the record established that Plaintiff had the onset of incontinence in late 2023 that was related to neurological complications from her severe spinal stenosis and cord compression. The ALJ plainly erred in failing to conduct a proper step two analysis under § 404.1529 and to weigh the medical evidence from various treaters and the chart reviewers that Plaintiff suffered from incontinence that was relevant to the proper determination of her residual functional capacity.

Social Security regulations make it clear that a claimant's impairment is severe if it significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Plaintiff's uncontested record evidence is that her incontinence progressively worsened in late 2023 concurrent with her increasing difficulties with her spinal stenosis and cord compression. Indeed, her symptoms became so challenging that she quit driving and mostly stayed at home because she was subject to suddenly urinating on her car seat and had a humiliating accident in public due to her incontinence. (Dkt. No. 21 at 50, 55, 58). The failure of the ALJ to find Plaintiff's incontinence as a severe impairment constitutes legal error.

Plaintiff's physical condition independent of her incontinence produced, at best, an extremely marginal residual function capacity. Once the severe impairment of incontinence is added to this marginal RFC, no fair minded person could conclude under Social Security statutes, regulations, and policies that Plaintiff is not disabled under the Act. Based on the administrative record, the Court finds that there is not substantial evidence to support a finding that Plaintiff had a residual functional capacity to perform less than the full scope of sedentary work. Consequently, the Court finds that Plaintiff is disabled under the Social Security Act.

The only remaining issue is the proper remedy to be provided under these circumstances.

The Court's general practice is to remand to the agency for further proceedings, but it is well settled that the Court has the authority to award benefits. 42 U.S.C. § 405(g). An award of benefits by a district court is appropriate where, as here, the record is fully developed and it is clear that with the application of proper legal standards the Commissioner would be required to award benefits on remand. *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *Holohan v. Massanairi*, 246 F.3d 1195, 1210 (9th Cir. 2001); *Brown v. Kijakazi*, 2021 WL 5276031, at *2 (D.S.C. Nov. 11, 2021). The Court finds that an award of benefits is proper on this record.

The final issue is Plaintiff's disability onset date. The record establishes that as of Plaintiff's emergency room visit of October 15, 2023, she was manifesting the symptoms of severe spinal stenosis and cord compression and intermittent incontinence. (Dkt. No. 21 at 343, 395). Ten days later, a report of a CT of the cervical spine documented Plaintiff's severe spinal stenosis at C5-6 with cord compression. (*Id.* at 382-83). The medical records from November 4, 7, and 8, 2023, document increasingly frequent incontinence related to her severe spinal condition. (*Id.* at 379-380). Based upon this record, the Court finds that Plaintiff was disabled under the Social Security Act as of November 4, 2023.

### Conclusion

Based on the foregoing, the Court **ADOPTS** the R & R of the Magistrate Judge (Dkt. No. 33) except the recommendation of remand for further proceedings at page 44. The decision of the Commissioner is **REVERSED** pursuant to 42 U.S.C. § 405(g). The Court remands the matter to the agency with instructions to **AWARD BENEFITS** from November 4, 2023.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge


Charleston, South Carolina
April 3, 2026